**Charles E. BUCKNER, and Betty Lou Buckner, Appellants,**

v.

**The PILLSBURY COMPANY, et al.**

**No. 45908.**

Missouri Court of Appeals,
Eastern District,
Division Eight.

Oct. 18, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1983.

Application to Transfer Denied
Jan. 17, 1984.

Thomas R. Dowd, David I. Hares, St. Louis, for appellants.

Robert H. Burns, Bernhardt Klippel, III, Clayton, Jeffrey Cramer, Hugh E. Gibbons, Sam P. Rynearson, St. Louis, for respondents.

CRIST, Presiding Judge.

Plaintiff husband suffered personal injuries when a trailer being unloaded on a ramp slipped backwards from its restraints. He and his wife, who claimed loss of consortium, brought an action against the manufacturer of the trailer unit, Pullman, Inc. (Pullman), the owner of the trailer, Ideal Truck Lines, Inc. (Ideal), and the operator of the trailer, Tucker Freight Lines, Inc. (Tucker) along with the party responsible for unloading the contents of the trailer, The Pillsbury Company (Pillsbury). At the close of plaintiffs' case, the trial court directed a verdict in favor of defendants Ideal and Tucker. The jury returned a verdict in favor of Pullman on plaintiffs' claim of negligent design of the trailer and found in favor of Pillsbury on a claim of negligence in the unloading process. We affirm.

Pillsbury unloads grain it purchases by raising an hydraulic ramp, upon which a tractor trailer unit is parked, approximately 45 degrees, allowing the grain to spill from the rear of the trailer into a storage bin. Plaintiff husband, a truck driver, was seated in the passenger side of a truck next in line to deliver grain. The truck was parked approximately 30 feet behind the hydraulic ramp.

As the first trailer was being emptied, 10,000 to 13,000 pounds of grain remained lodged in the front portion of the raised trailer. The Pillsbury operator then bounced or shook the trailer by quickly depressing and releasing the control button causing the ramp to jerk upwards. Suddenly the entire freight box of the trailer slid backwards toward the truck in which plaintiff sat. Plaintiff was injured attempting to exit the parked truck.

Plaintiffs claim the manifest weight of the evidence disclosed Pullman defectively designed the trailer unit for a use reasonably anticipated. This point preserves nothing for review. *Burrous v. American Airlines, Inc.,* 639 S.W.2d 263, 267–68 (Mo.App.1982). Although plaintiffs produced substantial testimony indicating a defective design by Pullman proximately caused husband's injuries, the jury chose to reject it. We cannot say as a matter of law the jury verdict was incorrect. The jury in the first instance is the sole judge of the credibility, weight, and value of the witnesses' testimony. The jury remains free to disbelieve the testimony of any one or all witnesses, even if the evidence is uncontradicted and unimpeached. *Cluck v. Abe,* 328 Mo. 81, 40 S.W.2d 558, 559–60 (1931); *Tennis v. General Motors Corp.,* 625 S.W.2d 218, 222 (Mo.App.1981); *Taylor v. F.W. Woolworth Co.,* 641 S.W.2d 108 (Mo. banc 1982). Furthermore, there was some testimony in response to a hypothetical question indicating a part of the trailer's suspension system may have been broken due to wear and tear causing the trailer to disengage.

Plaintiffs' second point urges reversal because the manifest weight of the evi-

dence is against the jury's verdict in Pillsbury's favor. See, *Burrous, supra.* The thrust of plaintiffs' evidence was the accident would not have occurred but for the defective design by Pullman of the trailer's suspension system. Plaintiffs submitted to the jury Pillsbury was negligent in causing the hydraulic lift to forcefully bounce, shake or jiggle while elevated with the trailer. Although plaintiffs' expert testified the bouncing or shaking of the raised trailer by Pillsbury's employee aggravated any latent instability in the suspension system, the expert also testified the accident could have happened without any bouncing or shaking. Accepting the evidence most favorable to plaintiffs' case, we find a lack of evidence supportive of a crucial finding the forceful bouncing, shaking or jiggling of the lift caused the accident. There was no showing the lift was used differently on this occasion to shake the grain out of the trailer as opposed to a routine removal of grain from other trailers. Without a showing the accident would not have happened absent the Pillsbury employee's bouncing, jiggling or shaking of the lift, plaintiffs failed to establish those acts as the proximate cause of their injuries. *Gottman v. Norris Construction Co.,* 515 S.W.2d 861, 863–64 (Mo.App.1974).

■ Plaintiffs' claim of error in Pillsbury's contributory negligence instruction, while meritorious, is rendered moot due to their failure to present a submissible case against Pillsbury. *Kirks v. Waller,* 341 S.W.2d 860, 861 (Mo.1961).

■ Finally, plaintiffs argue the trial court erred in dismissing their claims against Ideal and Tucker at the close of plaintiffs' case. Plaintiffs assert Ideal and Tucker negligently used a van-type trailer to haul grain instead of grain trailer. The evidence indicated van-type trailers are commonly used to haul grain. More importantly, plaintiffs' evidence was directed at showing a defectively designed· suspension system coupled with Pillsbury's shaking of the ramp caused the accident. Since the evidence showed Pullman used the same suspension system on both van-type trailers

and grain trailers, plaintiffs failed to show how the use of a van-type trailer to haul grain proximately caused their injuries. Insofar as no evidence, direct or indirect, showed the accident would not have happened if the van-type trailer had not been used, plaintiffs failed to prove a necessary element of their case against Tucker and Ideal. *Gottman v. Norris Construction Co.,* 515 S.W.2d 861, 864 (Mo.App.1974).

Judgment affirmed.

GAERTNER and KAROHL, JJ., concur.